[No. 21473. Department Two. November 27, 1928.]

I. L. KESNER *et al., Respondents,* v. INLAND EMPIRE LAND COMPANY, *Appellant.*[1]

[1]Reported in 272 Pac. 29.

2

*F. A. McMaster,* for appellant.

*Reba J. Hurn* and *Sidney H. Wentworth,* for respondents.

ASKREN, J.—This appeal is from a judgment entered in favor of the plaintiffs in an action on a guaranty by defendant of a note and mortgage. The facts necessary to a decision on the single question brought to us for consideration are as follows:

The respondents purchased a note and mortgage given by Thomas A. and Edna Johnson covering a farm owned by them in Douglas county, Washington. The amount of the note and mortgage was twenty-eight hundred dollars. The collection thereof was guaranteed by the Inland Empire Land Company of Spokane, Washington. This contract of guaranty need not be set out, for we construed one identical in form, issued by the same appellant, in *Macy v. Inland Empire Land Co.,* 145 Wash. 523, 260 Pac. 1073, and determined there that it was not a guaranty of payment, but collection. Interest was paid on the note and mortgage until 1921, when default was made on the interest due March 1, 1921. In August, 1922, Johnson filed an assignment for the benefit of creditors. The inventory of property and debts indicates that he was hopelessly insolvent, and owed approximately twelve thousand dollars more than he could pay. He was never discharged from his debts.

In January, 1923, the appellant brought a suit against Johnson and wife, praying for a foreclosure of a second mortgage given to it covering the same property. It alleged in its complaint, not only that the mortgage of twenty-eight hundred dollars was due and unpaid, but also that it had advanced for Johnson and wife the sum of $168, being the interest due respondent here on its note and mortgage. It took foreclosure

of its mortgage, and bid in the property. Respondents were unaware of this fact, being non-residents of the state. In May, 1923, respondents made demand upon appellant to make good its guaranty. Appellant wrote in reply that it had taken over the Johnson land, and that "crops have been short and prices low, so that nearly all the farmers have lost money the last few years."

In November, 1923, appellant wrote respondents, "Mr. Johnson went broke and we took his land over . . ." Again in February, 1924, appellant wrote that as soon as the year of redemption was over it would give respondents a deed to the land and save the costs of foreclosure, adding:

"Of course if you prefer to foreclose the mortgage there is nothing that we can do to prevent it, but that will not bring you the money and will only give you the land, as under present conditions there is no one who will buy the land."

In October of the same year, it addressed a letter to respondents concerning other land, in the same general vicinity, mortgaged also to respondents and collection of the amount secured thereby being guaranteed by appellant, as follows:

"We had in over five thousand acres of crop this year and to say nothing about getting our expense money back, we did not even get back the return of our seed, consequently it will be absolutely impossible for us to pay one dollar either on principal or interest on this loan.

"Many of the farmers have abandoned their lands in this vicinity, as for the past several years crops have been so short they have not received the return of their expense money.

"It will be easy for the mortgage holder to foreclose and get title to the land if this is the only thing that will satisfy. We have exhausted both our means and our credit in farming this and other lands similar.

4

While we thought this was a good locality, insufficient rainfall has made it very discouraging and has broken many of the farmers.

"Our local bank here in the city has agreed to finance us for seed and feed to farm this land, as well as other land, for the coming year, providing the mortgage holders will not start foreclosure proceedings until the 1925 crop is harvested. Seed is very high now and we figure it will cost $725 to $750 for seed, cultivating and planting this half section which is now in summer fallow in the spring. If you prefer to finance this instead of the bank, we will gladly give you the privilege and secure you on the crop. The land will not give you, or any one else, any return unless it is seeded in the spring.

"The only way that our bank will finance us to seed this half section is to first be guaranteed by you and ourselves that they will get their advance back first.

"This land was rented to a man for one quarter and now he has abandoned the place, so in all probability we will be compelled to hire the work done.

"We want to do the fair thing with everybody, and if you will agree to not start foreclosure proceedings until January 1, 1926, we will agree to deliver to you one-sixth of the crop for 1925, less the advances made. If this proposition is not acceptable to you, the land will not be seeded, as no way will be provided for us to do it."

Respondents foreclosed and there was a balance due after sale of $1,827.33, for the recovery of which this action was brought on the guaranty.

Appellant urges that the trial court erred in granting judgment against it, because the evidence failed to show that any suit was brought against Johnson to collect the unpaid balance; nor had respondents "by the use of due and reasonable diligence . . . become unable to collect the debt from the principal debtor." *Macy v. Inland Empire Land Co., supra.*

We have been cited to no decision of our own construing what "due and reasonable diligence" is, under

a guaranty of collection such as we have here. There is a conflict of authority in the several states, some courts holding that nothing short of a suit prosecuted to judgment, and the return of an execution thereon unsatisfied, will meet the requirement; while others hold that, since the law requires no idle act, it is not necessary to bring suit and pile up expense when the result thereof is bound to be fruitless. The latter view is sustained by the weight of authority. 28 C. J. 977. See, also, *Fall v. Youmans*, 67 Minn. 83, 64 Am. St. 390, note p. 399. In the last cited note we find the following:

"It is clear that insolvency does not excuse suit unless the fact is proved in some way, but the ascertainment, upon correct and sufficient proofs, of entire and notorious insolvency, is recognized by the law as answering the demand of due diligence, and as dispensing with the more dilatory evidence of a suit."

It is admitted by appellant that the record offered in the superior court was sufficient to show insolvency in 1922. Indeed the evidence upon this point is incontrovertible, for it shows that Johnson owed approximately twelve thousand dollars more than he had funds or assets with which to pay. But appellant urges that respondents offered no evidence to show that Johnson had at all times thereafter remained insolvent and unable to pay. In considering this question we must bear in mind that the *quantum* of proof offered by respondents need not be so great where it stands uncontroverted and uncontradicted. In this action appellant urged, as an affirmative defense, that Johnson at all times after the default of the mortgage was able to respond to the payment of the money due thereon, but offered not a whit of evidence to substantiate the allegation.

We are of the opinion that the trial court correctly held that respondents presented a *prima facie* case,

from which it could reasonably conclude that Johnson was unable to pay, and that a suit against him would be idle and a work of supererogation.

In addition to the insolvency shown at the time Johnson filed his assignment for the benefit of creditors, where he scheduled debts amounting to more than twelve thousand dollars and from which he was not discharged, the letters sent by appellant, portions of which we have heretofore set out, established the fact that up until October, 1924, farming conditions in the vicinity in which Johnson was located as a farmer were very bad, and it was impossible to secure even a return of the seed to those who planted in expectation of a crop.

It is undoubtedly true, as appellant urges, that a state of insolvency is not presumed to continue forever, but as the court said in *Cleage v. Laidley,* 149 Fed. 346: "It is presumed to continue as long as such a state of affairs usually continues under similar circumstances." In that action a grain dealer was deeply in debt in July, and the court held that fact sufficient to show insolvency in December.

In *Donahue v. Coleman,* 49 Conn. 464, the court held that a debtor was presumed to be bankrupt five months after the date of his bankruptcy. In speaking on this question the court observed:

"The rule of evidence which the defendant sought to invoke was the familiar one, that an existing state of things or a personal relation, when once established by proof, is presumed to continue till the contrary is shown. 1 Greenl. Ev., § 411. 2 Wharton's Law of Evidence, § 1289.

"The presumption in such a case is merely one of fact, and its effect depends on the nature of the matter or condition in question relative to its permanency and uniformity. For this reason such a presumption must in some cases (and we think bankruptcy is one) be confined to a limited range of time."

It will be noted that the court made a distinction between those things that are presumed to continue for a short length of time, because conditions may easily change the situation, and others where the condition is likely to continue for a great length of time.

In the latter case the bankrupt's debts were wiped out, and he had five months within which to accumulate funds. In this case Johnson never was discharged from his debts, and the amount he would owe would steadily increase by reason of the interest due thereon. This, coupled with the fact that farming operations all over that section of the state where he was engaged in that business were at a standstill for many years afterwards, certainly justifies the inference that insolvency continued down to the time of trial.

Judgment affirmed.

FULLERTON, C. J., FRENCH, PARKER, and MAIN, JJ., concur.